UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Warren Prescriptions, Inc., M.P.K., Inc., and
Sax Discount Pharmacy, Inc.,                           Case No. 17-10520

    Plaintiffs,                                       Honorable Nancy G. Edmunds

v.

Walgreen Co.,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION [24] FOR RECONSIDERATION OF DISTRICT COURT'S AUGUST 4, 2017 OPINION AND ORDER [23], AND DENYING MOTION [24] FOR CERTIFICATION TO MICHIGAN SUPREME COURT**

This matter is before the Court on Defendant's motion for reconsideration (docket 24) of the Court's August 4, 2017 opinion and order granting in part and denying in part Defendant's motion to dismiss (dkt. 23). In the alternative, Defendant makes a motion for certification to the Michigan Supreme Court. (Dkt. 24.) As part of the August 4 order, the Court denied Defendant's motion to dismiss on Plaintiffs' claims of breach of the indemnification provision and breach of the covenant of good faith and fair dealing. Defendant seeks reconsideration of these rulings.

## I. LEGAL STANDARD

Pursuant to Rule 7.1(h) of the Local Rules for the Eastern District of Michigan, a party may file a motion for reconsideration within fourteen days after a court issues an order to which the party objects. Although a court has the discretion to grant such a motion, it

generally will not grant a motion for reconsideration that "merely present[s] the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). To persuade a court to grant the motion, the movant "must not only demonstrate a palpable defect by which the court and the parties . . . have been misled but also show that correcting the defect will result in a different disposition of the case." *Id*. Defendant's arguments for why the Court should reconsider its rulings do not satisfy the requirements of Local Rule 7.1(h).

## II. Breach of Covenant of Good Faith and Fair Dealing

With respect to Plaintiffs' claim for breach of the covenant of good faith and fair dealing, the Court again addresses Defendant's primary argument that "Michigan does not recognize an independent claim for a breach of the implied covenant of good faith and fair dealing." (Def.'s Mot. at 2, dkt. 24, quoting *Phillips v. Green Tree Servicing LLC*, No. 15-13582, 2016 WL 627903, at *5 (E.D. Mich. Feb. 17, 2016); Op. and Order Aug. 4, 2017, at 15, dkt. 23, citing *Albrecht v. Mortg. Elec. Registration Systems, Inc.*, 14-13834, 2015 WL 477828 (E.D. Mich. Feb. 5, 2015)).

> The obligation of good faith is not an independent duty, but rather a modifier that requires a subject to modify. It is a principle by which contractual obligations or other statutory duties are to be measured and judged. Thus, while the obligation of good faith ... may affect the construction and application of [particular contractual provisions], it has no life of its own that may be enforced by an independent cause of action. [T]he common-law implied covenant of good faith and fair dealing ... is not enforceable as an independent cause of action, and the obligation of good faith has no application apart from some other contractual obligation or statutory duty.

*U.S. ex rel. Walter Toebe Const. Co. v. Guarantee Co. of North America*, 66 F. Supp. 3d 925, 931 (E.D. Mich. 2014) (quoting *Gorman v. Am. Honda Motor Co.*, 839 N.W.2d 223, 235 (Mich. Ct. App. 2013)).

Consistent with this, the Court in its prior opinion distinguished those cases in which the courts did not allow a plaintiff to employ a claim for breach of the implied covenant of good faith and fair dealing as those in which a plaintiff alleges that the covenant of good faith and fair dealing creates an obligation not otherwise contemplated by contract; for example, in mortgage-related cases where the borrower alleges that the defendant breached the duty by failing to engage in loss mitigation assistance or exercise discretion in loan modification determinations. *See e.g., Albrecht,* 2015 WL 477828; and *Phillips,* 2016 WL 627903; *see also Goodwin v. CitiMortgage, Inc.*, Case No. 1:12-CV-760, 2013 WL 4499003, at *7 (W.D. Mich. Aug. 19, 2013) (plaintiffs alleging that the defendants "had the discretion to modify [their] loan in accordance with HAMP and/or other loss mitigation programs" yet "[n]either the mortgage [n]or the note contain[ed] a reference to the Home Affordable Modification Program or any other type of loan modification program"). Nor can the covenant be used to override an express contractual term. *See Taylor v. Countrywide Home Loans*, Case No. 08-CV-13258, 2010 WL 750215 (E.D. Mich. Mar. 3, 2010) (plaintiffs used an allegation of breach of the covenant of good faith and fair dealing as "an attempt to override the express terms of the parties' agreement, which included express language permitting [the defendant] to take the actions about which plaintiffs[] complain").

Yet Michigan law also provides that "the covenant of good faith and fair dealing is an implied promise in every contract. The covenant is a promise that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to received the fruits of the contract.'" *Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*, 602 F. Supp. 2d 829 (W.D. Mich. 2008) (citing *Hammond v. United of Oakland, Inc.*, 483 N.W. 2d 652, 655 (Mich. Ct. App. 1992)); *see also Bolone v. Wells Fargo Home Mortg.,*

*Inc.*, 858 F. Supp. 2d 825, 834 (E.D. Mich. 2012); *Burkhardt v City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975) ("Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith."); *Lowe's Home Centers, Inc. v. LL & 127, LLC*, 147 Fed. Appx. 516, 523-24 (6th Cir. 2005) ("[W]here the manner of performance under a contract is left to the discretion of a party, that party may breach the contract by exercising its discretion in bad faith."). "Discretion arises when the parties have agreed to defer decision on a particular term of the contract." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) Discretion also arises when the contract "omits terms or provides ambiguous terms." *Grand Traverse Band of Ottawa and Chippewa Indians v. Blue Cross Blue Shield of Michigan*, 2017 WL 3116262, at *7 (E.D. Mich. July 21, 2017) (citing *Wedding Belles v. SBC Ameritech Corp., Inc.*, Case No. 250103, 2005 WL 292270, at *1 (Mich. App. Feb. 8, 2005)).

Plaintiffs' good faith and fair dealing claim neither overrides nor contradicts express contract terms. *See Stephenson*, 328 F.3d at 826. Plaintiffs' allegations show that they rely on the covenant of good faith and fair dealing not to introduce a new term, but rather as a modifier to the existing terms of the contract, for example, those related to the deferred portion of the purchase price, and to prevent Defendant, for example, from "running the pharmacies . . . in a substandard manner during the First Twelve Month Period." (Compl. ¶ 49; Am. Compl. ¶ 49); *U.S. ex rel Walter Toebe Const. Co.*, 66 F. Supp 3d 931.

This is a case in which the contractual obligation is tied to a condition and the only party with discretion to affect the condition after Closing is Defendant. Thus is ever there was a fact pattern that created an obligation different from the cases relied on by

4

Walgreen's, this is that case. If the minimum number of prescriptions was to be met so that Plaintiffs receive the deferred payment, Plaintiffs, as the dependent parties, "must rely on the good faith of the party in control." *See Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 877 n.2 (5th Cir. 1989) (applying Michigan law) ("Only in such cases do the courts raise explicitly the implied covenant of good faith and fair dealing, or interpret a contract in light of good faith performance."). The party in control, as of and following the Closing, was Defendant.

To the extent Defendant relies on cases in which the court found that the plaintiff did not allege or plead any facts to support that the discretion was left to the defendant, Plaintiffs here have alleged that Defendant had discretion (am. compl. 44, 45), which is not inconsistent with any other allegations or the terms of the contract. *See generally Liggett Rest. Grp., Inc. v. City of Pontiac*, Case No. 256571, 2005 WL 3179679 (Mich. Ct. App. Nov. 29, 2005); *McLaren Reg'l Med. Ctr. v. CompleteRX, Ltd.*, Case No. 16-14268, 2017 WL 3034615 (E.D. Mich. July 18, 2017).

To the extent Defendant argues that Michigan law requires an "express conferral of discretion in a contractual duty," *Liggett, McLaren and Taylor*, on which Defendant relies, do not so state. Defendant's argument seems to imply a requirement that there be some magic words conferring discretion, yet these cases point out that the plaintiffs failed to identify and allege provisions in which the defendant had discretion. For example, the *Liggett* court pointed out that the "proposed amended complaint contained no allegations that the manner of performance of any express terms of the concession contract were discretionary with defendants and that the discretionary performance of those acts occurred in bad faith." *See Liggett Rest. Grp., Inc.*, 2005 WL 3179679, at *2 (In Liggett, like the other

cases on which Defendant relies, the plaintiff attempted to use the covenant of good faith and fair dealing to imply a contractual term or other duty that was simply not part of the contract. The *Liggett* court noted that the "plaintiff acknowledged in its proposed amended complaint that the concessions contract was silent with regard to the booking and retaining of events. . . . [T]he conclusory allegation that the booking and retaining of events was a matter left to defendants' discretion under the concession contract is insufficient. Moreover, a review of the concession contract attached to the proposed amended complaint fails to reveal any terms from which it could be inferred that the act of booking and retaining of events was a matter of contract between the parties."). The *Liggett* court found that the plaintiff "failed to plead an essential element of a claim for breach of the implied covenant of good faith and fair dealing because it failed to adequately allege that defendants had discretion in the manner of performance of the term of the concession contract upon which the breach of the implied covenant is based." *Id.* at \*2; *see also McLaren Reg'l Med. Ctr. v. CompleteRX, Ltd.*, Case No. 16-14268, 2017 WL 3034615, at \*5-6 (E.D. Mich. July 18, 2017) ("[T]he plaintiff's position here that the defendant had "discretion" under the agreement is counter-factual in light of its allegations that specific terms of the agreement defined what items should be billed one way and what items should be billed the other—i.e., that the defendant had no leeway to do one thing, because the agreement dictated that it must do the other. . . . Because the agreement does not purport to vest sole discretion in CompleteRX to determine or modify the criteria for deciding what is a 'Specialty Drug,' the gravamen of the plaintiff's claims of mis-billing comes down to simply determining whether or not the billings submitted conformed to the terms of the agreement, as drafted and construed by the parties, and does not implicate any independent duty on

the plaintiff's part to behave in 'good faith' during any discretionary performance."); and

*Taylor v. Countrywide Home Loans*, No. 08-13258, 2010 WL 750215, at *12 (E.D. Mich. Mar. 3, 2010) ("Discretion arises when the parties have agreed to defer decision on a particular term of the contract. Plaintiffs point to no such provision in the parties agreement that confers such discretion on Countrywide. . . . [P]laintiffs' attempt to characterize Countrywide's conduct as "bad faith" or a breach of the covenant of good faith and fair dealing is merely an attempt to override the express terms of the parties' agreement, which included express language permitting Countrywide to take the actions about which plaintiffs' complain."). This is unlike the case at bar, where Plaintiffs have included such allegations and identified a provision which left discretion for performance solely in Defendant's control. (Comp. and Am. Compl. ¶¶ 23, 24, 25, 32, 43, 44, 45, 48, 49).

Again, Plaintiffs' allegations do not seek to introduce new terms to the APA through reliance on the covenant of good faith and fair dealing. The APA already contemplates both the filling of prescriptions and a continued operation of the pharmacy-- Plaintiffs' claim is that these existing matters of contract need be executed with a duty of good faith and fair dealing pursuant to Michigan law. This is unlike *Liggett*, in which the plaintiff sought to impose acts not contemplated by the contract-- the booking and retaining of events-- on the defendant through a claim of good faith and fair dealing. Plaintiffs allege that Defendant breached the covenant with respect to existing provisions of the agreement, those provisions over which Defendant had discretion. The Court will deny Defendant's motion for reconsideration of the good faith and fair dealing claim.

## III.  Certification of this question to Michigan Supreme Court

E.D. Michigan Local Rule 83.40 provides that a Judge

> [M]ay certify an issue for decision to the highest Court of the State whose law governs its disposition. An order of certification shall be accompanied by written findings that:
>
> (1) the issue certified is an unsettled issue of State law, and
> (2) the issue certified will likely control the outcome of the federal suit, and
> (3) certification of the issue will not cause undue delay or prejudice.
>
> Such order shall also include citation to precedent, statutory or court rule authority authorizing the State Court involved to resolve certified questions.

E.D. Mich. Local Rule 83.40.

As a initial matter, the decision to certify an issue lies within the discretion of the federal court. "[T]he mere difficulty in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit. [The Court does] not suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory." *See Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974); *see also Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 2009 WL 3390244 (E.D. Mich. 2009).

The Court finds that Defendant has not met the requirements necessary for certification of this issue to the Michigan Supreme Court. First, the issue of good faith and fair dealing is not an unsettled issue of State law. In its August 4, 2017 opinion and order and in response to Defendant's motion for reconsideration, the Court addressed the issue and applied Michigan law. (Dkt. 23.) The Court cited several Michigan cases in support of its finding that Plaintiffs have plead enough to avoid dismissal of their claim of breach of good faith and fair dealing. To the extent that Defendant specifically asks that "this Court should certify to the Michigan Supreme Court the question of whether *Deom* represents Michigan law," the Court notes here as it did in its prior opinion that *Deom v. Walgreen Co.*,

8

591 Fed. Appx. 313 (6th Cir. 2014), applies Illinois law. (Dkt. 24 at 7.) To the extent the Court discussed issues in *Deom* that were not inconsistent with Michigan law, and were based in part on strikingly similar facts, *Deom* is not necessary to resolution of the issues addressed herein or in the Court's August 4, 2017 opinion and order. While the Court does not find *Deom* inconsistent with Michigan cases on some points, the Court relies on Michigan court of appeals cases and federal court cases that apply Michigan state court law for its findings here and in the August 4, 2017 opinion and order, and does not find it necessary to certify a question to the Michigan Supreme Court. Further, the Court addressed above Defendant's argument that "Michigan law is clear on this point: a contractual duty and discretion conferring provision are required before the duty of good faith and fair dealing applies," and does not find this an unsettled issue of State law.

Next, the issue is not likely to control the outcome of the federal suit; multiple claims survive Defendant's first and second motions to dismiss. Finally, Defendant has made no more than a general allegation that certification of the issue "will not cause 'undue delay or prejudice,'" coupled with an appeal to avoiding the expenses that both parties will incur during intensive discovery. In light of this and the above considerations, the Court finds that certification to the Michigan Supreme Court is unnecessary and denies Defendant's request for same.

IV. **Indemnification**

Defendant argues that the Court "misread the indemnification provision in the APA in a manner inconsistent with Michigan law when it ruled that the indemnification provision governs Plaintiff's breach-of-contact claim against Walgreens." (Dkt. 24 at 8.) Defendant argues that "[t]he indemnification provision at issue here in no way reflects an intent to

9

permit Plaintiffs to recover a $4 million earnout from Walgreens regardless of whether the prescription count is satisfied." (Dkt. 24 at 9.)**.**The Court specifically addressed the same argument in the August 2017 opinion at pages 10 through 12. Contrary to Defendant's position, the Court's findings do not "render[] provisions outlining how Plaintiffs could receive the Retention Earnout mere 'surplusage.'" (Dkt. 24 at 9.)  As the Court pointed out in the prior opinion and order,

> [Defendant's argument] ignores the requirement in section 10.2 that the Loss and Expense arise from "the conduct or operation of the Business by Buyer or any of its Affiliates after Closing" and, as set forth below, Plaintiffs have specifically alleged conduct by Defendant in operating the business which would have resulted in a loss of customers and prescriptions.

(Dkt. 23 at 12.) The Court also cited Michigan cases in which the courts found indemnity provisions applicable between the parties without the presence of liability to a third party or third-party involvement. (Dkt. 23 at 6-7.)  With respect to Defendant's final argument that the Court should find the APA indemnification provision ambiguous and allow extrinsic evidence regarding the parties' intent, Defendant has not identified an actual ambiguity in the provision, aside from arguing that the Court's reading of the provision renders the retention earnout provision surplusage, with which the Court disagrees and has already addressed both here and in its prior opinion and order. The primary case on which Defendant relies was a case in which the parties provided the court with two "plausible interpretations of the Agreement's indemnification provision." *Authorized Integrators Network, LLC v. Wirepath Home Sys., LLC*, 2013 WL 3179505,  at *3 (E.D. Mich. June 20, 2013). Defendant's attempt to analogize language in *Wirepath* with the APA provision at issue ignores an important distinction in the *Wirepath* case. In *Wirepath*, the plaintiff argues that the indemnity clause was intended to indemnify the plaintiff for "any loss, . . . damage

or expense . . . which [the plaintiff] may suffer, . . . as a result of (I) [the defendant's] **operation of its business**, . . . ." *Id.* at *2 (emphasis added). The plaintiff argued that the defendant's "wrongful termination of the Agreement and failure to pay commissions are operations of [the defendant's] business that caused [the plaintiff] to sustain a loss, and such losses are covered by the plain language of the indemnification provision." *Id.* at *3. The defendant argued that "operation of its business" was not an unqualified grant of indemnity and could not be read apart from references to the defendant's "products," which appeared in the same indemnification provision, thus arguing that the indemnification provision was "intended to apply only to claims, suits, or actions brought by third parties and arising out of the design or manufacture of [the defendant's] products." *Id.* at *3. Thus, the *Wirepath* parties showed that their provision was "susceptible to two or more reasonable interpretations." *Id.* The parties here have shown no such ambiguity in the APA indemnification provision.

Defendant has not satisfied the requirements of Local Rule 7.1(h) in asking the Court to reconsider its ruling on Plaintiffs' claim for indemnification.

## V.  CONCLUSION

For the reasons set forth herein and in the August 4, 2017 opinion and order (dkt. 23), the Court DENIES Defendant's motion for reconsideration (dkt. 24) and DENIES Defendant's alternative motion for certification to the Michigan Supreme Court.

**SO ORDERED.**

    s/Nancy G. Edmunds
    Nancy G. Edmunds
    United States District Judge

Dated: January 4, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 4, 2018, by electronic and/or ordinary mail.

                <u>s/Lisa Bartlett</u>
                Case Manager